THOMAS O'BRIEN, Petitioner-Appellant, *v.* THE BOARD OF TRUSTEES OF THE FIREMEN'S FUND OF THE CITY OF EAST ST. LOUIS *et al.,* Respondents-Appellees.

Fifth District   No. 77-357

Opinion filed October 11, 1978.

JONES, J., dissenting.

John M. English, of Listeman, Bandy & Hamilton, of Belleville, for appellant.

Jack Carey and David J. Letvin, of Cohn, Carr, Korein, Kunin and Brennan, of East St. Louis, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Thomas O'Brien appeals from a judgment of the circuit court of St. Clair County which affirmed a decision of the Board of Trustees of the Firemen's Pension Fund of the City of East St. Louis, finding Mr. O'Brien capable of performing the duties of an inspector or dispatcher with the fire department and terminating his disability pension on the basis of such finding. See Ill. Rev. Stat. 1973, ch. 108½, pars. 4—110 and 4—112.

Mr. O'Brien, a fire fighter for 17 years, was awarded a line-of-duty disability pension on July 20, 1972. (Ill. Rev. Stat. 1971, ch. 108½, par. 4—110.) Apparently, the condition prompting the pension award was an "ulnar neuropathy," a condition which caused a loss of sensation in Mr. O'Brien's hands. Subsequent to the pension's commencement, at least one report of an examining physician was received by the Board which restated the physician's opinion that Mr. O'Brien's condition would disqualify him from full duties as a fire fighter while suggesting that he would be able to perform light duties.

According to the brief of the Board, the Board passed a motion on October 30, 1973, reinstating O'Brien to active duty at his former rank of Captain, with the provision that the job made available to him be one he could perform. O'Brien did not return to duty and a full hearing was had before the Board on January 21, 1974, the purpose of which was to determine if O'Brien could perform the duties of an inspector or dispatcher (light duties) or should remain on a disability pension. After this hearing, the Board found that he could perform light duties and entered an order on January 30, 1974, removing O'Brien from the pension

rolls. O'Brien appealed the decision to the circuit court pursuant to a complaint under the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*). An unreported hearing was conducted, and the trial court entered an order on April 15, 1977, finding that there was ample evidence to support the Board's finding that O'Brien was able to perform limited duty as an inspector or dispatcher and that the Board could terminate a pension if the fireman can perform light duties. A motion to vacate this order was denied and this appeal ensued.

At the hearing before the Board it was stipulated that O'Brien had not recuperated and that his neurological disability had not changed in any way. The Board's position was that there was sufficient evidence in its possession in the form of several medical reports received in December of 1972 to establish O'Brien's capacity to function as a dispatcher or inspector and that his pension would be terminated because of this capacity unless O'Brien produced evidence to negate the inference. Unfortunately, none of these reports are exhibits on appeal. However, the pertinent portion of the report of Dr. Samuel Ezenwa was read into the record; it does imply that Mr. O'Brien is fit for light duties.

Also at the hearing, Mr. O'Brien testified about his present job with the Illinois Fire Commission. His job with the Commission was as a liaison man, characterized by O'Brien as "a talking job." He had to drive his personal auto to and from Springfield in order to perform his functions there which included the operation of a dictaphone.

O'Brien further testified that it was his belief that he could not operate a push-button phone to the extent necessary to fill a dispatcher job with the department or operate in any capacity for the department at the proper level of efficiency.

Appellant O'Brien's position in this appeal is that section 4—112 of the Illinois Pension Code (Ill. Rev. Stat. 1973, ch. 108½, par. 4—112) requires that the Board prove that the fireman has recovered from his disability before a pension may be ordered to cease, and that since the Board did not present any evidence that he had recovered and the evidence at the hearing was to the effect that the neurological condition was still in existence and that he could not perform fire fighting duties, the pension was improperly terminated. More specifically, he argues that section 4—112 does not allow the Board to recall "disabled" firemen to perform light duties.

The Board's position, on the other hand, is that as interpreted by our supreme court (*Peterson v. Board of Trustees*, 54 Ill. 2d 260, 296 N.E.2d 721 (1973)) disability under the Code requires that a fireman be not merely disabled from fighting fires, but rather be "disabled for service in the fire department," *i.e.*, unable to hold any full-time position in the fire department. It argues that the evidence as to O'Brien's Commission job

and the medical evidence suggesting his ability to do light work sufficiently establish that O'Brien is capable of performing a full-time job with the force, that of inspector or dispatcher. He is therefore not disabled for service, and the Board could terminate his pension under section 4—112 of the Code. In other words, although his neurological condition still existed, the subsequent evidence supports a finding of his "recovery" from his prior presumed disability to perform light duties.

■■ The issue, therefore, on appeal is whether the Board, having once granted a disability pension, can properly terminate that pension if it subsequently decides that the fireman can perform an available job with the department involving lighter duties than fighting fire, although the fireman's original disability had not changed in any way. At the time of the Board's decision, section 4—112 of the Code (Ill. Rev. Stat. 1973, ch. 108½, par. 4—112) provided for the termination of a pension which had been properly awarded:

> "Upon satisfactory proof being made to the Board that a fireman on the disability pension roll *has recovered from his disability*, the Board shall order that his pension cease." (Emphasis added.)

The statutory language unequivocally sets forth the requirement that a fireman recover from his disabling illness or defect before the Board can terminate the pension and reinstate the fireman into active service. The facts in this case are clear and undisputed. On July 20, 1972, O'Brien was awarded a service connected disability pension based upon competent medical evidence. Subsequent to that date, no evidence has been offered tending to prove that O'Brien has recovered from his disability or that his neurological disability has changed in any respect. The fact that the Board found O'Brien fit to perform light duties in the department sometime after the original disability award is irrelevant. The language of section 4—112 is unambiguous. Once a disability pension is properly granted, it cannot be terminated except in compliance with the statutory requirements. The Board should not have unbridled discretion in terminating disability pensions solely by finding that a particular fire fighter can engage in lighter activities in the department. We therefore question the Board's determination in 1974 that O'Brien was able to perform limited duty as an inspector or dispatcher when, under the same medical conditions, O'Brien was awarded a disability pension in 1972.

■■ The Board, as noted previously, relies on *Peterson v. Board of Trustees*, 54 Ill. 2d 260, 296 N.E.2d 721 (1973), for the proposition that it can deny a fireman a pension if he is capable of performing the duties of any full-time position for the department. In *Peterson*, a fireman was denied a disability pension although he was no longer able to continue his duties as a fire fighter. The Illinois Supreme Court held that if there is sufficient evidence before the Board to support a finding that a fireman is

capable of performing the duties of any available full-time position of service for the department, the Board can deny the fireman a pension. Although the court in *Peterson* addressed the issue of an applicant seeking a disability pension, it did not deal with the propriety of revoking a disability pension which had previously been granted. Different statutory provisions are involved. The standard for granting a disability pension under sections 4—110 and 4—111 of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, pars. 4—110 and 4—111) is not the same as terminating a properly awarded pension under section 4—112. Had O'Brien originally been denied a disability pension, the reasoning in *Peterson* would apply. But once the pension is granted, there must be some evidence of recovery from the disability to justify the pension's termination.

■■ In conclusion, we find no evidence to support the revocation of O'Brien's disability pension pursuant to section 4—112 of the Illinois Pension Code. The findings and decision of the Board are clearly against the manifest weight of the evidence. (See *Peterson; Cohn v. Smith*, 14 Ill. 2d 388, 395, 153 N.E.2d 83, 86 (1958).) Accordingly, the judgment of the Circuit Court of St. Clair County is reversed.

Reversed.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

I respectfully dissent.

It is well settled that a fireman is not entitled to a pension in the first instance under either section 4—110 or 4—111 of the Illinois Pension Code (Ill. Rev. Stat. 1973, ch. 108½, pars. 4—110 and 4—111) solely by reason of the fact that he is no longer able to perform the duties of a fire fighter, but rather he must be disabled for service in the fire department in any full-time position, including fire inspector. (*Peterson v. Board of Trustees*, 54 Ill. 2d 260, 296 N.E.2d 721 (1973); *Mulder v. Board of Trustees*, 103 Ill. App. 2d 174, 242 N.E.2d 627 (1968).) Consequently, if there is sufficient evidence before the Board to support a finding that a fireman is capable of performing the duties of any full-time position of service for the department which is available, the Board can deny the fireman a pension and such decision must be affirmed on appeal. (See *Peterson* and *Mulder*.) However, as I see it, the question presented here is whether the Board, having once granted a pension, can properly terminate that pension if it subsequently gains evidence to support the conclusion that the fireman can perform an available job with the department involving lighter duties than fighting fire. I would hold that it can.

At the time of the Board's decision, section 4—112 of the Code (Ill. Rev. Stat. 1973, ch. 108½, par. 4—112), dealing with cessation of pensions, read in pertinent part as follows:

> "Upon satisfactory proof being made to the Board that a fireman on the disability pension roll *has recovered from his disability*, the Board shall order that his pension cease." (Emphasis added.)

It is the duty of the court to enforce the law as enacted according to its plain and unmistakable provisions. (*Peterson*; *Stiles v. Board of Trustees*, 281 Ill. 636, 641-42, 118 N.E. 202 (1977).) The instant section does not require proof that the fireman has fully recovered from, or is no longer subject to, the original mental or physical condition which afflicted him, but rather that there be proof that he has recovered from his disability. As definitively interpreted in *Peterson*, disability under the Code is equivalent to an inability to serve in any full-time position with the fire department. In view of these facts, any interpretation of this section other than that the Board is empowered to revoke a pension upon subsequent evidence of the fireman's capacity to perform a full-time light duty position which is available would be unwarranted and an exercise in judicial legislation.

The current version of section 4—112 (Ill. Rev. Stat. 1977, ch. 108½, par. 4—112, as amended by Pub. Act 79-1187) provides for yearly medical examinations of a fireman retired for disability as a check of the continuance of his disability for service as a fireman. Both versions of this provision demonstrate that the finding of a "permanent" disability, required by statute before commencing a pension, is subject to alteration upon discovery of evidence refuting the prior determination of disability for service.

In the present case, there is no indication in the record that any evidence with respect to O'Brien's ability to perform light work was considered prior to the commencement of his pension in July 1972. It was, however, undisputed at all times that he was unfit for fighting fires. It is my belief that under the Code's scheme for cessation of a pension upon one's recovery from *disability* that the Board's finding that O'Brien was disabled for service on evidence directed solely towards his capacity for current fire fighting duties does not estop the Board from terminating his pension upon sufficient subsequent proof of his ability to perform service in the department of a light duty nature.

It is fundamental that the findings and conclusions of the Board on questions of fact are *prima facie* true and correct (Ill. Rev. Stat. 1973, ch. 110, par. 274; *Peterson*), and that on review the court's duty is to ascertain if the findings and decision of the administrative agency are against the manifest weight of the evidence. *Peterson*; *Cohn v. Smith*, 14 Ill. 2d 388, 395, 153 N.E.2d 83 (1958).

There was sufficient evidence in the record to support the conclusion of the Board that a position as inspector or dispatcher was available to O'Brien and that he was physically capable of performing the duties of such positions. The conclusions of the Board on these issues should therefore not be disturbed. In addition to the inference to be derived from the December 1972 medical report of Dr. Ezenwa, as well as others apparently considered by the Board, substantial support for the Board's finding as to O'Brien's capacity to fill such positions is found in the evidence relating to his job with the Fire Commission. O'Brien drove his personal auto substantial distances to and from Springfield in order to engage in that job, which required his operation of a push-button dictaphone (see *Peterson*, where similar evidence of a fireman's employment duties were considered as supportive of a Board's decision). It thus appears that O'Brien is presently gainfully employed in performing the very type of duty upon which he bases his claim to entitlement to a disability pension.

I would affirm the judgment of the trial court.